**McDERMOTT WILL & EMERY LLP**
RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
2049 Century Park East, Suite 3800
Los Angeles, California 90067-3218
Telephone:  +1 310 277 4110
Facsimile:   +1 310 277 4730

**McDERMOTT WILL & EMERY LLP**
ANKUR GOEL (admitted pro hac vice)
agoel@mwe.com
JOSHUA DAVID ROGACZEWSKI (admitted pro hac vice)
jrogaczewski@mwe.com
The McDermott Building
500 North Capitol Street, Northwest
Washington, D.C. 20001
Telephone:  +1 202 756 8000
Facsimile:   +1 202 785 8087

Attorneys for Defendants Aveta, Inc.; MMM Healthcare, Inc.; PMC Medicare Choice, Inc.; MSO of Puerto Rico, Inc.; MMM Holdings, Inc.; and Richard Shinto

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOSÉ R. VALDEZ,<br><br>Plaintiff,<br><br>v.<br><br>AVETA, INC.; MMM HEALTHCARE, INC.; PMC MEDICARE CHOICE, INC.; MSO OF PUERTO RICO, INC.; MMM HOLDINGS, INC.; and RICHARD SHINTO,<br><br>Defendants. | CASE NO. 2:11-cv-03343-GW-JC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER CASE TO THE DISTRICT OF PUERTO RICO**<br><br>**HEARING:**<br>DATE:       JANUARY 12, 2015<br>TIME:        8:30 A.M.<br>JUDGE:     HON. GEORGE H. WU<br>COURTROOM:  10 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

I. Relator's Medical Condition and Choice of This Forum Do Not
   Outweigh Other Factors in This Case. ........................................................2

   A. Relator's Medical Condition Has No Bearing on the Motion To
      Transfer. ..................................................................................................2

   B. Cases Uniformly Hold That a *Qui Tam* Relator's Forum Choice Is
      Not Given Substantial Weight, and Relator's Opposition Cites No
      Cases to the Contrary. ............................................................................4

II. The Opposition's Other Efforts To Obscure the Predominance of
    Puerto Rican Witnesses and Interests Are Unpersuasive. ...........................5

   A. The Opposition's Efforts To Discount the Convenience of
      Defendants and the Numerous Witnesses Who Live in or Near
      Puerto Rico Fail. .....................................................................................5

   B. The Interests of Justice Warrant Transfer to Puerto Rico. .....................8

CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*United States ex rel. Adrian v. Regents of the Univ. of Cal.*,
   No. C 99-3864 THE, 2002 WL 334915 (N.D. Cal. Feb. 25, 2002) ...................... 4

*Core-Vent Corp. v. Nobel Industries AB*,
   11 F.3d 1482 (9th Cir. 1993) .................................................................................. 6

*George v. NCAA*,
   No. CV 08-03401 GAF (AGRx), 2008 WL 5422882 (C.D. Cal.
   Dec. 17, 2008) ........................................................................................................ 8

*Gulf Oil Co. v. Gilbert*,
   330 U.S. 501 (1947) ............................................................................................... 9

*McCormack v. Medcor, Inc.*,
   No. 2:13-cv-02011 JAM CKD, 2014 WL 1934193 (E.D. Cal.
   May 14, 2014) ........................................................................................................ 5

*Medex Mark Corp. v. Chen*,
   96 CIV. 3485 LMM, 1997 WL 187377 (S.D.N.Y. Apr. 16, 1997) ...................... 3

*Miracle v. N.Y.P. Holdings, Inc.*,
   87 F. Supp. 2d 1060 (D. Haw. 2000) .................................................................... 6

*Mutual Pharm. Co. v. Watson, Pharm., Inc.*,
   CV 09-5700 PA (RCX), 2009 WL 3401117 (C.D. Cal. Oct. 19,
   2009) .................................................................................................................. 6, 7

*Pacific Car & Foundry Co. v. Pence*,
   403 F.3d 949 (9th Cir. 1968) .................................................................................. 7

*R.E. Davis Chem. Corp. v. Int'l Crystal Labs., Inc.*,
   03 C 7288, 2004 WL 2191328 (N.D. Ill. Sept. 27, 2004) ..................................... 3

*United States ex rel. Roop v. Arkray USA, Inc.*,
   No. 1:04 CV 87-M-D, 2007 WL 844691 (N.D. Miss. Mar. 19,
   2007) ....................................................................................................................... 4

*Santa Clara Cnty. Dep't of Family & Children's Servs. v. A.P. (In re
   M.P.)*,
   158 Cal. Rptr. 3d 458 (Ct. App. 2013) ................................................................... 2

*United States ex rel. Swan v. Covenant Care, Inc.*,
   No. C-97-3814 MHP, 1999 WL 760610 (N.D. Cal. Sept. 1, 1999) ...................... 5

**Statutes and Rules**

31 U.S.C. § 3730 (2012) ............................................................................................ 5

Fed. R. Civ. P. 17 ...................................................................................................... 3

Fed. R. Civ. P. 43 ...................................................................................................... 3

Fed. R. Evid. 802 ...................................................................................................... 3

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## INTRODUCTION

Relator's opposition does not dispute the facts at the heart of Defendants' motion, which demonstrate that this case is one about events in Puerto Rico. It does not dispute that Relator worked in Puerto Rico, that the central defendants[1] operate and provide health insurance in Puerto Rico, that most of the witnesses identified in his complaint reside in Puerto Rico, or that the medical records in issue in the case were generated in Puerto Rico. The most logical conclusion from these undisputed facts is that the case should be transferred to and litigated in the District of Puerto Rico.

Relator's opposition seeks to avoid this result by focusing primarily on his choice of and presence in this forum and his alleged medical inability to leave it. But Relator's medical condition—unfortunate as it is—does not outweigh the other factors in this case compelling transfer. Public records reflect that Relator's injuries have severely affected his mental capacity to the extent he has had a guardian ad litem appointed in another case. As such, his participation in the case, regardless of where it occurs, is at best questionable. Moreover, the evidence reflects that Relator is physically able to travel, though not alone, and in any case provisions could be made for him to participate in a trial in Puerto Rico electronically.

The opposition also provides a grab-bag of arguments that seek to discount the core fact that this case is uniquely centered in Puerto Rico, rather than in this district. The record is nonetheless clear that Puerto Rico would best serve the interests of the parties, witnesses, and justice.

---

[1] MMM Healthcare, LLC; PMC Medicare Choice, LLC; MSO of Puerto Rico, LLC; and MMM Holdings, LLC.

## I. Relator's Medical Condition and Choice of This Forum Do Not Outweigh Other Factors in This Case.

### A. Relator's Medical Condition Has No Bearing on the Motion To Transfer.

Relator's opposition to transfer relies particularly on his asserted inability to travel to Puerto Rico as a result of a "hypoxic brain injury," which counsel asserts outweighs the fact that the case is uniquely centered in Puerto Rico. (R. 54, Pl.'s Opp'n 3–4.) But in the end, Relator's unfortunate medical condition does not weigh against transfer, as he has had a guardian ad litem appointed on grounds that he is incompetent, and it is accordingly entirely speculative whether he would be able to participate in this case regardless of where it is held. Even if he were able to do so, the evidence does not support a conclusion that he is physically unable to travel; even if he could not, he could participate electronically.

In a separately filed medical-malpractice case, Relator has been declared legally "incompetent" and had a guardian ad litem appointed for him pursuant to section 372(a) of the California Civil Procedure Code. (Ex. 4, *Valdez v. Hazany* GAL Appl. & Order 1–2.) A guardian ad litem appointment is based on a conclusion that an individual is "incompetent," i.e., not able to "rationally confer with [his] counsel about the facts or rationally assist him with the case" and is unable to "rationally give and take advice regarding legal strategy." *See Santa Clara Cnty. Dep't of Family & Children's Servs. v. A.P. (In re M.P.)*, 158 Cal. Rptr. 3d 458, 468 (Ct. App. 2013). An earlier joint statement of the parties in that case also stated that Relator "is alleged to have a diminished mental capacity, which may affect [his] ability to be deposed." (Ex. 5, *Valdez v. Hazany* Jt. Stmt. 2.)

Although there is at this time no guardian ad litem filing or similar determination in this case,[2] declarations filed in connection with the opposition to

---

[2] The federal rules provide that "A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER CASE TO THE DISTRICT OF PUERTO RICO      -2-      (CASE NO. 2:11-CV-03343-GW-JC)

the venue motion refer to memory loss and confusion, anxiety, and seizures (R. 56, E. Valdez Decl. ¶ 5), and Defendants believe Relator's medical records support these observations.[3]

Even if Relator were able to participate in this case, Relator's physician's declaration—filed after the venue opposition—establishes that he *can* travel to Puerto Rico, though "it is not safe for [Relator] to travel *alone*." (R. 59, Choi Decl. ¶ 3 (emphasis added).) Relator's physician does not support the assertions in the venue opposition that Relator is "physically unable" to travel to Puerto Rico, or that he has been ordered not to travel by air. (*See* R. 54, Pl.'s Opp'n 3–4.)[4]

In any event, as noted in the December 15 status conference, Relator can testify by deposition or "in open court by contemporaneous transmission from" Los Angeles to Puerto Rico. *See* Fed. R. Civ. P. 43(a); *see also, e.g.*, *R.E. Davis Chem. Corp. v. Int'l Crystal Labs., Inc.*, 03 C 7288, 2004 WL 2191328, at *6 (N.D. Ill. Sept. 27, 2004) ("although the Court is sensitive to the concerns of Mr. Davis, Plaintiff's principal, about his health and his inability to travel, he may appear by deposition in Illinois no matter where the litigation is centered"); *Medex Mark Corp. v. Chen*, 96 CIV. 3485 LMM, 1997 WL 187377, at *2 (S.D.N.Y. Apr. 16, 1997) (transferring even though the secretary of the plaintiff could not travel).

---

ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] . . . incompetent person who is unrepresented in an action." *See* Fed. R. Civ. P. 17(c)(2). The term "unrepresented" in Rule 17 refers to representatives who may "sue or defend" on behalf of a minor or an incompetent person, such as a general guardian or fiduciary. *See id.* R. 17(c)(1).

[3] If the Court believes it necessary in deciding this motion, Defendants are prepared to provide under seal additional information from Relator's medical records.

[4] The assertions in the venue opposition were supported by a declaration from Relator's spouse (R. 56, E. Valdez Decl. ¶ 6), which is inadmissible hearsay, Fed. R. Evid. 802, and is contradicted by the later-filed sworn testimony of Relator's physician.

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER CASE TO          -3-          (CASE NO. 2:11-CV-03343-GW-JC)
THE DISTRICT OF PUERTO RICO

### B. Cases Uniformly Hold That a *Qui Tam* Relator's Forum Choice Is Not Given Substantial Weight, and Relator's Opposition Cites No Cases to the Contrary.

Relator's opposition also asks the Court to ignore cases holding that "a plaintiff's choice of forum is not given substantial weight when the plaintiff is a *qui tam* relator, asserting the rights of the United States government." *See, e.g.*, *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, No. C 99-3864 THE, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002) (transferring case); (*see also* R. 49, Mot. Transfer 12). Although *Adrian* and similar cases are not controlling circuit precedent, as the opposition points out (R. 54, Pl.'s Opp'n 3–4), the cases are uniform and well-reasoned, and the opposition cites no case to the contrary. Indeed, as one of the cases cited by Relator's opposition observes:

> [F]ederal district courts throughout the nation have held that, in *qui tam* actions, the plaintiff's choice of venue is not entitled to the same level of deference as in other actions.
>
> While the aforementioned district court decisions cited by defendant are merely persuasive authority, plaintiffs have failed to offer a single decision holding to the contrary, and this court's research has revealed no countervailing authority on this point. . . . In light of the weight and consistency of the aforementioned authority, it seems to be the consensus view among district courts that a plaintiff's choice of forum is entitled to considerably less deference in *qui tam* cases. This court agrees . . . .

*United States ex rel. Roop v. Arkray USA, Inc.*, No. 1:04 CV 87-M-D, 2007 WL 844691, at *2 (N.D. Miss. Mar. 19, 2007) (citations and footnote omitted). The consistent holdings of district courts are well reasoned and persuasive: "[I]n a *qui tam* action such as the present one, the United States, not plaintiff, is the real plaintiff in interest." *Id.*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

This principle applies equally whether the government has intervened in the case, notwithstanding Relator's counsel's suggestion to the contrary. (R. 54, Pl.'s Opp'n 4.) The government remains the real party in interest, whether it intervenes or not, and courts routinely transfer *qui tam* cases from a relator's chosen forum in cases in which the government has declined to intervene. *See, e.g.*, *United States ex rel. Swan v. Covenant Care, Inc.*, No. C-97-3814 MHP, 1999 WL 760610, at *3 (N.D. Cal. Sept. 1, 1999) (transferring case); (Ex. 6, *Swan* Docket Sheet 3 (showing government nonintervention on March 31, 1999)).[5]

## II. The Opposition's Other Efforts To Obscure the Predominance of Puerto Rican Witnesses and Interests Are Unpersuasive.

In addition to emphasizing Relator's choice of forum, the opposition offers a miscellany of unpersuasive arguments that fail to obscure the reality that this case's clear center of gravity is Puerto Rico.

### A. The Opposition's Efforts To Discount the Convenience of Defendants and the Numerous Witnesses Who Live in or Near Puerto Rico Fail.

Relator's opposition seeks to dismiss the relevance of Puerto Rico's convenience to Defendants and many of the witnesses, on grounds that most of them are corporations. (R. 54, Pl.'s Opp'n 5–6.) But although a court could consider the corporate defendant's resources in balancing convenience factors, there is no basis for dismissing it wholesale. The principal case upon which Relator's opposition relies found that the party-convenience factor was in equipoise and *granted* the company's motion to transfer. *McCormack v. Medcor, Inc.*, No. 2:13-cv-02011 JAM CKD, 2014 WL 1934193, at *2–5 (E.D. Cal. May 14, 2014). Other

---

[5] The opposition also attempts to distinguish Relator's case on the basis of his retaliation claim. (R. 54, Pl.'s Opp'n 4.) But it is not uncommon for *qui tam* relators under the False Claims Act to also have retaliation claims under the statute's whistleblower-protection provision, 31 U.S.C. § 3730(h) (2012).

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER CASE TO     -5-     (CASE NO. 2:11-CV-03343-GW-JC)
THE DISTRICT OF PUERTO RICO

cases in fact confirm that the convenience of corporate parties is relevant in any Section 1404(a) analysis and in fact can tip the scales in favor of transfer. *See, e.g., Mutual Pharm. Co. v. Watson, Pharm., Inc.*, CV 09-5700 PA (RCX), 2009 WL 3401117, at *8 (C.D. Cal. Oct. 19, 2009) (transferring case because corporate party's witnesses were predominantly in the transferee forum).[6]

With respect to the witnesses in this case, the opposition does not seriously dispute that Puerto Rico is more convenient for the vast majority of them. Relator cannot dispute that the majority of individuals identified in the amended complaint reside in Puerto Rico (R. 49, Mot. Transfer 9 (five of eight)); that the remaining individuals reside in Florida and New York, for which Puerto Rico is more convenient than Los Angeles (*id.*);[7] or that third-party witnesses that are central to Relator's allegations, but not identified by name—Puerto Rico physicians whose payments were allegedly held back, Puerto Rico coding-unit personnel who allegedly "cherry-picked" audit results, and Relator's former coworkers in Puerto Rico who allegedly observed Defendants' mistreatment of Relator—are in Puerto Rico (R. 49, Mot. Transfer 9–10 & nn.6–7). The opposition seeks to avoid these undisputed facts by dismissing the convenience of those witnesses employed by Defendants, suggesting out-of-state witnesses can be deposed, and identifying an

---

[6] The opposition's reliance on two other cases for this argument is equally misplaced. The court in *Miracle v. N.Y.P. Holdings, Inc.*, commented that the corporate defendant could more easily handle the dislocation of litigating away from its home. But the key point was the presence of five central witnesses in the district where the case had been filed. 87 F. Supp. 2d 1060, 1073 (D. Haw. 2000). In this case, by contrast, the identified witnesses are all—except for Relator—in Puerto Rico or on the East Coast. *Core-Vent Corp. v. Nobel Industries AB*, is not even a venue transfer case and addresses whether a California court could exercise personal jurisdiction over Swedish doctors. 11 F.3d 1482, 1483 (9th Cir. 1993).

[7] Relator does not dispute that it will take less effort for these three individuals to travel to Puerto Rico than Los Angeles, but he suggests that the Court weigh the "extra hour or two in an airplane" against his purported inability to travel. (R. 54, Pl.'s Opp'n 8.) Defendants address Relator's current health above. (*See supra* Part I.A.)

unspecified third-party witness in California. (R. 54, Pl.'s Opp'n 7–8.) As addressed below, these arguments are not persuasive.[8]

First, citing no authority, the opposition seeks to discount the inconvenience of witnesses who remain employees of Defendants but nevertheless reside in Puerto Rico on the ground that they are affiliated with Defendants. (R. 54, Pl.'s Opp'n 7.) Courts, however, routinely transfer cases to facilitate the convenience of party-affiliated witnesses. For example, in *Pacific Car & Foundry Co. v. Pence*, the Ninth Circuit vacated a district court's refusal to transfer a case and remarked that "[m]any witnesses, including several members of petitioner's corporate staff, would have to travel from the mainland to Hawaii in order to give testimony with consequent disruption of the conduct of petitioner's operation." 403 F.3d 949, 953 (9th Cir. 1968). More recently, in *Mutual Pharmaceutical*, the court transferred a case to the District of New Jersey because "the vast majority of party-affiliated witnesses [we]re located within or near New Jersey, and . . . New Jersey w[ould] be a far more convenient forum for them," which "strongly favor[ed] transfer." 2009 WL 3401117, at *8.

Second, the effort to inject a California-based third-party witness, the Coding Source (R. 54, Pl.'s Opp'n 7), fails to establish that there is any witness in California or that such witness's convenience outweighs the many others who are in Puerto Rico. The opposition's entire argument about the Coding Source consists of counsel's declaration testimony that "Internet searches . . . indicate that it is based in Los Angeles," archived screenshots of the company's website, and the company's LinkedIn page. (R. 55, Bienert Decl. ¶¶ 4–7.) The information on the website cited in counsel's declaration establishes that the Coding Source operated nationally, so

---

[8] The ability to take depositions of out-of-state witnesses and use them at trial is irrelevant, because that ability exists in *all* federal cases. If that ability is sufficient to accommodate witness inconvenience, then the "convenience of witness" standard for Section 1404(a) transfers would be rendered meaningless.

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER CASE TO    -7-    (CASE NO. 2:11-CV-03343-GW-JC)
THE DISTRICT OF PUERTO RICO

there is no basis for assuming that any employed or independent-contractor witness from the Coding Source would be located in Los Angeles. (*E.g.*, R. 55 Ex. C, 2013 Coding Source Info. 2.)  Relator's counsel establishes the identity of no witnesses, much less confirm that they ever worked for the Coding Source in Los Angeles, still work for the Coding Source, or still reside in Los Angeles.  *Cf. George v. NCAA*, No. CV 08-03401 GAF (AGRx), 2008 WL 5422882, at *4 (C.D. Cal. Dec. 17, 2008) ("Plaintiffs merely refer to witnesses who are associated with Ticketmaster and, thus, presumably located in California.  Plaintiffs' failure to produce a witness list suggests that Plaintiffs' contentions regarding such witnesses are speculative.").[9]

Third, it is far from clear that Coding Source witnesses are important to Relator's case.  The opposition alleges that the Coding Source performed an audit on Defendants' RAF scores and that Defendants used selective results from the audit to inflate their Medicare claims.  (R. 54, Pl.'s Opp'n 7.)  Even if that allegation were true, which Defendants deny, the key witnesses would be Defendants' personnel in Puerto Rico, who received and allegedly used the audit results, and not the Coding Source, which merely prepared the alleged audit.

### B. The Interests of Justice Warrant Transfer to Puerto Rico.

The opposition's only response to the multiple interest-of-justice factors—including the connection of this case to jurors in Puerto Rico, the lower cost of litigation, the ability to compel live witness testimony, and the predominance of bilingual judges and jurors in Puerto Rico (R. 49, Mot. Transfer 13–17)—is a

---

[9] The opposition accused Defendants of identifying "unspecified clusters of witnesses" (R. 54, Pl.'s Opp'n 8), but that is precisely what Relator's counsel has done.  And where Defendants did refer to categories of witnesses identified in Relator's own complaint, Defendants have either identified key witnesses in Puerto Rico by name or explained that *all* members of a category (e.g., the doctors who service Defendants' members, the IPAs, and the MSO Advisory Committee members) are Puerto Rico physicians, unlike the Coding Source, whose employees or independent contractors are located nationally.  (R. 49, Mot. Transfer 10 nn.6–7.)

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER CASE TO            -8-            (CASE NO. 2:11-CV-03343-GW-JC)
THE DISTRICT OF PUERTO RICO

1 conclusory assertion that the relevant documents are in English and the Central
2 District of California can handle cases in Spanish. (R. 54, Pl.'s Opp'n 9–10.) But
3 Relator's opposition ignores that the connection between this case and Puerto Rico
4 is much stronger than the connection between it and this forum.

5       That connection is in part because Defendants' Medicare plans—which
6 provide coverage only in Puerto Rico—serve almost 35% of Puerto Rico's
7 Medicare Advantage participants, and Medicare Advantage is utilized by almost
8 75% of Medicare-eligible Puerto Rico residents. (R. 49, Mot. Transfer 15.) The
9 opposition does not contest these figures, or that Puerto Rico juries would have an
10 interest in this case while a jury in Los Angeles would not—an important factor in
11 the interests of justice. *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508–09 (1947)
12 (juries should not decide cases that have no relationship to their communities).

13       Finally, Relator's opposition attempts to dispute the fact that this case will
14 involve significant Spanish-language evidence and that Puerto Rico has a greater
15 proficiency in Spanish than this district. (R. 49, Mot. Transfer 16–17.) Relator
16 counters—on the basis of his counsel's assertion—that the case will revolve around
17 English-language documents. (R. 54, Pl.'s Opp'n 9–10 (citing R. 55, Bienert Decl.
18 ¶ 3).) But Relator's counsel lacks sufficient personal knowledge of Defendants'
19 business to be able to dispute Orlando González's testimony that "business
20 communications by employees in Puerto Rico were likely in Spanish" or that many
21 witnesses will prefer to testify in Spanish. (R. 50, González Decl. ¶ 11.)

22       Contrary to the opposition's assertion, Defendants do not claim that this
23 Court is incapable of handling the evidence in this case (*see* R. 54, Pl.'s Opp'n 10),
24 but rather that the District of Puerto Rico is better able to do so due to the pervasive
25 use of Spanish in Puerto Rico, combined with the fact that Puerto Rico juries and
26 judges are bilingual, facts that Relator's opposition does not dispute. (R. 49, Mot.
27 Transfer16–17.).
28

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER CASE TO    -9-    (CASE NO. 2:11-CV-03343-GW-JC)
THE DISTRICT OF PUERTO RICO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## CONCLUSION

For all of the above reasons and those presented in their initial memorandum of points and authorities, Defendants urge the Court to transfer this action to the District of Puerto Rico.

Dated: December 24, 2014              **McDERMOTT WILL & EMERY LLP**

By: */s/ Russell Hayman*
RUSSELL HAYMAN
Attorney for Aveta, Inc.; MMM Healthcare, Inc.; PMC Medicare Choice, Inc.; MSO of Puerto Rico, Inc.; MMM Holdings, Inc.; and Richard Shinto

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER CASE TO THE DISTRICT OF PUERTO RICO    -10-    (CASE NO. 2:11-CV-03343-GW-JC)